UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GRANITE OUTLET, INC.,

Plaintiff,

v.

HARTFORD CASUALTY INSURANCE
COMPANY and Does 1 to 10, Inclusive

Defendant.

No.  2:14-cv-00575-TLN-EFB

**ORDER**

This matter is before the Court on Plaintiff Granite Outlet, Inc.'s ("Plaintiff") Motion for

Leave to File First Amended Complaint.  (ECF No. 17.)  Hartford Casualty Insurance Company

("Defendant") has filed an opposition to Plaintiff's motion.  (ECF No. 20.)  The Court has

carefully considered Plaintiff's motion and the arguments presented in Defendant's opposition.

For the reasons below, the Court GRANTS Plaintiff's Motion for Leave to File First Amended

Complaint.

I.      FACTUAL AND PROCEDURAL BACKGROUND

        This action arises out of Defendant's declination of coverage for two employment-related

claims filed against its insured, Plaintiff.  (Opposition by Defendant, ECF No. 20 at 1.)  Plaintiff

failed to pay wages to two former employees, and as a result the California Labor Commissioner

awarded the employees $61,425.21 (Chau Van's total award) and $43,332.52 (Shao Hui Zhao's

1

total award) in unpaid wages.  (Notice of Removal, Complaint, ECF No. 1-1 at ¶ 10.)  These underlying actions were appealed and settled.  (ECF No. 20 at 1.)

On December 23, 2013, Plaintiff filed a complaint for declaratory relief against Defendant.  (ECF No. 20 at 6.)  The complaint alleges that the parties have a written contract between them for insurance.  (Complaint, Ex. B ¶5, ECF No. 1-1, at 2.)  Defendant responded by filing a motion to dismiss on March 7, 2014, arguing that the policy at issue does not provide coverage for the wage claims being appealed.  (ECF No. 20 at 6.)  This motion was taken off calendar after Plaintiff identified a "related case" in its opposition and filed a Notice of Related Case.  (ECF No. 20.)  Plaintiff filed a Notice of Settlement of Related State Court Cases on June 25, 2014.  (ECF No. 20.)

On August 11, 2014, Plaintiff submitted a Motion for Leave to File First Amended Complaint.  (ECF No. 17.)  Plaintiff claims that since the filing of the complaint, new circumstances have arisen that require amendments to the complaint.  The proposed amendments are as follows:

> (a) First Cause of Action, paragraph 11 re calculation of total damages;
> (b) First Cause of Action, paragraph 15-26 re facts arising since filing of the initial complaint, and the justiciability of the claims;
> (c) Second Claim for Relief re Breach of a Written Contract paras 27-49;
> (d) Third Claim for Relief re Bad Faith (Third Party)—Unreasonable Failure to Defend and Indemnify Claims paragraph 50-60; and
> (e) Prayer for Relief paragraphs 1, 3-8.

(ECF No. 17 at 2.)

*A.   The Liability Policy*

Defendant issued Plaintiff a liability policy that was in effect from November 13, 2012, to November 3, 2013.  (ECF No. 20 at 3.)  The policy included Business Liability Coverage, Employee Benefits Liability Coverage and Umbrella Liability Coverage.  (ECF No. 20 at 3.)

For the Business Liability Coverage, the Insuring Agreement provides:

> "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising

2

injury' to which this insurance applies.  This insurance applies: (1) To 'bodily injury' and 'property damage' only if: (a) The 'bodily injury' or 'property damage' is caused by an 'occurrence'...."

(ECF No. 20 at 3.)

As for the Employee Benefits Liability Coverage's Insuring Agreement, it states that Defendant will "pay those sums that the insured becomes legally obligated to pay as 'damages' because of 'employee benefits injury' to which the insurance applies."  (ECF No. 20 at 4.)

Finally, the Umbrella Liability Coverage provides that Hartford will pay "those sums that the insured becomes legally obligated to pay as 'damages' in excess of the 'underlying insurance' or of the 'self-insured retention' when no 'underlying insurance' applies, because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies caused by an 'occurrence.'"  (ECF No. 20 at 5.)

II. <u>STANDARD</u>

Pursuant to Federal Rule of Civil Procedure 15(a)(2), once a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Rule 15(a)(2) further states that the "court should freely give leave when justice so requires."  The Ninth Circuit has held that "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality."  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citing *Rosenberg Brothers & Co. v. Arnold*, 283 F.2d 406 (9th Cir. 1960) (per curiam))).  This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties, but is subject to several factors.  *Id.*  The Ninth Circuit considers five factors in determining whether leave to amend should be given: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint."  *In re Western States Wholesale Natural Gas Antitrust Litigation,* 715 F.3d 716, 738 (9th Cir. 2013) (*citing Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)).  In deciding whether Defendant's motion is proper, the Court will consider these factors.  These factors, however, are not of equal weight in that delay, by itself, is

insufficient to justify denial of leave to amend.  *See DCD Programs,* 833 F.2d at 186; *Webb,* 655

F.2d at 980; *Hurn v. Retirement Fund Trust of Plumbing,* 648 F.2d 1252, 1254 (9th Cir. 1981).

"[T]he consideration of prejudice to the opposing party carries the greatest weight."  *Eminence*

*Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003).

III.   ANALYSIS

**A.  Federal Rule of Civil Procedure 15**

Although Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give

leave when justice so requires, this does not mean that leave should be granted automatically.

*Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387 (9th Cir. 1990.)  Defendant focuses in its

opposition on the futility of amendment and undue delay factors.  (ECF No. 20.)  As for the

remaining three factors, the Court determines that detailed analysis is unnecessary.  There is no

evidence of bad faith on the part of Plaintiff here, nor anything to suggest prejudice to the

Defendant.  Defendant does not state that it would suffer any kind of prejudice if the motion for

leave to amend is granted.  Furthermore, there is no evidence that Plaintiff has previously

amended his complaint.

*i.*      *Undue Delay*

A court may consider the factor of undue delay, but undue delay by itself is generally

insufficient to justify denying a motion to amend.  *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir.

1999).  However, the Ninth Circuit has ruled that an eight month delay between the time of

obtaining a relevant fact and seeking a leave to amend is unreasonable.  *See AmerisourceBergen*

*Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006); *Texaco, Inc. v. Ponsoldt,* 939

F.2d 794, 799 (9th Cir. 1991).

Defendant explains in its opposition that Plaintiff waited nearly four months to file a

motion to amend its complaint.  (ECF No. 20).  Other than arguing that Plaintiff's actions have

wasted months of time and the Court's resources, the Defendant does not present any evidence

that this time delay has caused any actual harm.  The Court does not consider this delay

egregious.  Delay alone is insufficient to justify denial of leave to amend.  *See DCD Programs,*

833 F.2d at 186; *Webb,* 655 F.2d at 980; *Hurn v. Retirement Fund Trust of Plumbing,* 648 F.2d 1252, 1254 (9th Cir. 1981).

ii.      *Futility of Amendment*

Futility of amendment can, by itself, justify the denial of a motion for leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  A court can also deny a leave to amend where the proposed amendment would be subject to dismissal.  *See Carrico v. City & County of San Francisco,* 656 F.3d 1002, 1008 (9th Cir. 2011).  However, dismissal without granting leave to amend is "improper unless it is clear [. . .] that the complaint could not be saved by any amendment."  *Krainski v. State of Nevada ex rel. Bd. Of Regents of Nevada System of Higher Ed.,* 616 F.3d 963, 972 (9th Cir. 2010).  In other words, a proposed amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Therefore, the test to assess the legal sufficiency of a proposed amendment is identical to the one used to determine the sufficiency of a pleading challenged under Rule 12(b)(6).  *Baker v. Pacific Far East Lines, Inc.*, 451 F.Supp. 84, 89 (N.D. Cal. 1978) (*citing* 3 Moore's Federal Practice P 15.08(4) (2d ed. 1974).

In its opposition, Defendant argues that neither the Business Liability Coverage, the Employee Benefits Liability Coverage, nor the Umbrella Liability Coverage provide coverage for a claim regarding an employer's failure to pay wages and the penalties and fines resulting from that failure.  (ECF No. 20 at 8.)  Therefore, Defendant argues that this complaint, and any subsequent amendments, should be dismissed.

a.  *Business Liability Coverage*

The Insuring Agreement for the Business Liability Coverage provides:

> "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies.  This insurance applies: (1) To 'bodily injury' and 'property damage' only if: (a) The 'bodily injury' or 'property damage' is caused by an 'occurrence'…."

(ECF No. 20 at 3.)  Therefore, in order for this coverage to apply, a claim must be for either a "bodily injury," "property damage" or "personal and advertising injury" and must be caused by an "occurrence."

An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (ECF No. 20 at 3.)  A "bodily injury" constitutes a "physical injury, sickness, or disease sustained by a person." (ECF No. 20 at 3.)  Property damage is defined as "physical injury to tangible property, including all resulting loss of use of that property." (ECF No. 20 at 3.)  Finally, "personal and advertising injury" is defined as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: (a) false arrest, detention or imprisonment; (b) malicious prosecution; (c) wrongful eviction and similar property violations; (d) defamation; (e) invasion of privacy; (f) copying another's 'advertising idea' or 'advertisement'; (g) infringement on copyright; or (h) discrimination or humiliation." (ECF No. 20 at 3.)

The underlying claims here involve a loss of wages.  Both parties state that this does not constitute a bodily injury.  (ECF No. 27 at 16 and ECF No. 20 at 9.)  Furthermore, the claim does not arise out of any of the offenses listed under the definition of "personal and advertising injury."

Defendant argues that the claim does not constitute property damage (ECF No. 20 at 9) whereas Plaintiff responds that it may.  (ECF No. 27 at 16.)  Plaintiff argues that the claim is about loss of wages, which is money and money is a tangible item.  (ECF No. 27 at 17.)  Plaintiff suggests that there is a loss of use of that property.  (ECF No. 27 at 17.)

Although Plaintiff provides some evidence that the claim may fit under the property damage definition, the Court does not analyze the issues of whether this constitutes "property damage" or an "occurrence" because there is an exclusion under the Business Liability Coverage. The exclusion for "Employment Related Practice […] precludes coverage for: personal and advertising injury to: (1) A person arising out of any…[e]mployment-related practices, policies, acts or omissions…." (ECF No. 20 at 4.)  Paying wages for employees, or failing to do so, is employment related.  Therefore, even if the claim did meet one of the definitions, it would be

6

excluded from the coverage because Plaintiff's failure to pay wages would constitute an employment-related practice or omission.  Plaintiff fails to address this exclusion in its arguments.

### b. *Employee Benefits Liability Coverage*

The Employee Benefits Liability Coverage's Insuring Agreement provides that Defendant will "pay those sums that the insured becomes legally obligated to pay as 'damages' because of 'employee benefits injury' to which the insurance applies."  (ECF No. 20 at 4.)  An employee benefits injury is defined as an "injury that arises out of any negligent act, error or omission in the 'administration' of your 'employee benefits program.'"  (ECF No. 20 at 4.)  "Administration" and "employee benefits program" are defined as follows:

> Administration: Giving counsel to your employees or their dependents and beneficiaries with respect to interpreting the scope of your employee benefits program or their eligibility to participate in such programs; handling records in connection with employee benefits programs; and starting or stopping any employee's participation in your employee benefits program.

> Employee benefits program: a formal program or programs of employee benefits maintained in connection with your business or operations, such as but not limited to: group life insurance, group accident or health insurance, profit sharing plans and stock subscription plans, provided that no other than an employee may subscribe to such insurance or plans; and unemployment insurance, social security benefits, workers' compensation and disability benefits.

(ECF No. 20 at 4.)

Defendant argues that the payment of wages does not fall under the definition of an employee benefits program.  (ECF No. 20 at 11.)  The Court concludes that it is not a formal program, nor does it resemble the examples listed in the provision.[1]  Furthermore, failing to pay employees does not constitute "administration" of a program.  However, Plaintiff explains that it is not contending that the actual wages due are covered, but rather the penalties and liquidated damages assessed against it.  (ECF No. 27 at 18.)  Even with this new contention by Plaintiff, the definitions of administration and employee benefits program are not met.  Furthermore, Defendant

---

[1] The Court applies the principle of *ejusdem generis* here.  California courts apply this principle as follows: "particular expressions qualify those which are general." Cal. Civ. Code §3534.  Following this principle, here the list of particular examples qualify the general term "employee benefits program".  The regular payment of wages does not fit within this list and therefore does not meet the definition.

1   points to the agreement which provides that "damages" excludes fines and penalties.  (ECF No. 20

2   at 4.)  Therefore, the penalties that Plaintiff mentions are not covered.

3          Furthermore, an employee benefits injury is defined as an "injury that arises out of any

4   negligent act, error or omission."  (ECF No. 20 at 4.)  Defendant contends that there is no such

5   thing here.  (ECF No. 20 at 12.)  Courts have held that a breach of contract claim is generally not

6   covered under professional liability policies because there is "no wrongful act and no loss since the

7   insured is simply being required to pay an amount it agreed to pay."  *Health Net, Inc. v. RLI Ins.*

8   *Co.*, 206 Cal. App. 4th 232, 253 (2012).  The Eighth Circuit has held that under a policy that limits

9   coverage to any "negligent act, error or omission" in administration of employee benefit programs,

10  any breach of duty related to a breach of contract, rather than negligence, was not covered under

11  the policy.  *First Southern Ins. Co. v. Jim Lynch Enterprises, Inc.,* 932 F.2d 717 (8th Cir. 1991).

12  Here, the case involves breach of contract claims for failure to pay wages.  Plaintiff contends that

13  there was a dispute about what exactly the underlying verbal agreement entailed and that it had a

14  good faith belief that it did not have to pay the overtime at issue.  (ECF No. 20 at 13.)  This is

15  simply a breach of duty related to a breach of contract, and therefore not covered under the policy.

16  It does not amount to a negligent act.[2]

17         Finally, the Employee Benefits Liability Coverage's Insuring Agreement also contains an

18  exclusion for "the failure of any person or organization to perform any obligation or to fulfill any

19  guarantee with respect to: the payment of benefits under employee benefit program; or the

20  providing, handling or investing of funds related thereto."  (ECF No. 20 at 4-5.)  Therefore, even if

21  the payment of wages, or the failure to pay wages, were considered an employee benefit program,

22  the coverage would be excluded by this provision.  Once again, Plaintiff fails to address this

23  exclusion.

24  //

25  //

26  

27  [2] The Court applies the following in coming to this conclusion: "The fact that the breach of the contractual obligation may itself have been negligent also does not render it a covered wrongful act.  *Health Net, Inc. v. RLI Ins. Co.,* 206 Cal. App. 4th 232, 253 (2012) (citing *Baylor Heating & Air Conditioning, Inc. v. Federated Mutual Ins. Co.* (7th Cir.1993) 987 F.2d 415, 419–20 [negligent failure to properly fund a pension plan is not a covered wrongful act].)

*c. Umbrella Liability Coverage*

Finally, the Umbrella Liability Coverage provides that Hartford will pay "those sums that the insured becomes legally obligated to pay as 'damages' in excess of the 'underlying insurance' or of the 'self-insured retention' when no 'underlying insurance' applies, because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies caused by an 'occurrence.'" (ECF No. 20 at 5.)  This coverage also includes an Employment Practices Liability exclusion that is substantively identical to the Employment Related Practices exclusion in the Business Liability Coverage party.  (ECF No. 20 at 5.)  It includes the same definitions of "damages", "employee benefits injury", "administration" and "employee benefits program."  (ECF No. 20 at 5.)  Thus, the Court rests on its analysis in the above sections.

IV.   CONCLUSION

It appears that Plaintiff's amendments will most likely be futile, however, in the interest of justice the Court will allow Plaintiff to amend its Complaint.  The Court arrives at this decision by applying Rule 15's policy of favoring amendments to pleadings liberally.  Dismissal without granting leave to amend is "improper unless it is clear. . . that the complaint could not be saved by any amendment." *Krainski,* 616 F.3d at 972.  It is not entirely clear here whether or not an amendment could save the complaint.

Although the Court is granting leave to amend, the Court cautions Plaintiff in doing so. The Court will not look favorably on the argument that Plaintiff's failure to pay the wages, as well as the penalties and damages associated with this failure, fall under the Business Liability Coverage, the Employee Benefits Liability Coverage, or the Umbrella Liability Coverage. Plaintiff may file an amendment within 30 days of this order.  If none is received, the Court will rule on the pending Motion to Dismiss.  (ECF No. 6.)  Therefore, the Court hereby GRANTS Plaintiff's Motion for Leave to File First Amended Complaint.

IT IS SO ORDERED.

Dated:  January 21, 2015

Troy L. Nunley
United States District Judge